**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

SUAAD ABDULSALAM,

        **Plaintiff,**

 vs.               5:12-cv-1631
                     (MAD)
**COMMISSIONER OF SOCIAL SECURITY,**


        **Defendant.**
_____

**APPEARANCES:**           **OF COUNSEL:**

**OLINSKY LAW GROUP**        **HOWARD D. OLINSKY, ESQ.**
300 South State Street
Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**  **MARIA FRAGASSI SANTANGELO, ESQ.**
Office of the General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorney for Defendant


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Suaad Abdulsalam brings the above-captioned action pursuant to 42 U.S.C. § 405(g), seeking a review of the Commissioner of Social Security's decision to deny her application for Supplemental Security Income ("SSI"). Presently before the Court are Plaintiff's motion for judgment on the pleadings, Dkt. No. 16, and Defendant's opposition and cross-motion for judgment on the pleadings, Dkt. No. 17.

## II. BACKGROUND

On September 21, 2009, an application for SSI was protectively filed on behalf of Plaintiff, who was then under eighteen, alleging a disability onset date of July 12, 2002. Dkt. No. 12, Administrative Transcript ("T."), at 143-45. On January 6, 2010, Plaintiff's application was denied, T. 69-75, and on February 8, 2011, Plaintiff and her counsel appeared by video at a hearing before Administrative Law Judge ("ALJ") Barry Peffley, T. 11-43. ALJ Peffley issued a decision denying Plaintiff's claim for benefits on April 5, 2011. T. 45-68. Thereafter, Plaintiff requested review by the Appeals Council, T. 7-10, which review was denied on September 6, 2012, T. 1-6, thereby making the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff was 20 years old at the time of the ALJ's decision, could not read or write English, did not have a high school education, and had no past work experience. T. 63. Plaintiff alleges disability as a result of mild mental retardation, leg pain and shortness of leg due to fracture, headaches, and arm injury. T. 53, 169. The record evidence in this case is undisputed and the Court adopts the parties factual recitations. *See* Dkt. No. 16 at 4-14; Dkt. No. 17 at 4 ("The Commissioner incorporates Plaintiff's statement of facts set forth in her brief . . , with the exception of any inferences, arguments, or conclusions therein.").

## III. DISCUSSION

### A. Legal Standards

For purposes of SSI, a person is disabled when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citations omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment

3

for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

A child under the age of eighteen will be considered disabled if it can be shown that she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has devised a three-step process for hearing officers to utilize in determining whether a child is disabled. 20 C.F.R. § 416.924(a). At step one, the ALJ is charged with determining whether the claimant is engaged in "substantial gainful activity," *id.*, which is defined as "work activity that involves doing significant physical or mental activities" typically in exchange for "pay or profit," *id.* § 416.972(a)-(b). If the claimant is not engaging in substantial gainful activity, then the ALJ may proceed to step two, at which the ALJ must determine whether the claimant has "an impairment or combination of impairments that is severe." *Id.* § 416.924(a). If the claimant is found to have a severe impairment or a combination of severe impairments, the analysis proceeds to the third step, at which point the ALJ must determine whether the claimant has an impairment or combination of impairments that "meets, medically equals, or functionally equals" a presumptively disabling condition found within the listings of impairments (the "Listings"). *Id.*; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

A child's functional limitations are evaluated pursuant to criteria set forth in the following six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi);

*see also Keene ex rel. J.T. v. Astrue*, No. 10-cv-00360, 2012 WL 5269624,*7 (N.D.N.Y. Oct. 24, 2012). A medically determinable impairment or combination of impairments is considered to functionally equal a condition in the Listings if it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A marked limitation is characterized as any limitation that is "more than moderate but less than extreme." *Id.* § 416.926a(e)(2)(i) (internal quotation marks omitted). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).

**B.     The ALJ's Decision**

With regard to Plaintiff's claim for SSI prior to attaining age eighteen, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the date the application was filed. T. 53. At step two, the ALJ concluded that Plaintiff suffered from mild mental retardation, leg pain and shortness of leg due to fracture, and headaches, which qualified as a "severe impairments" within the meaning of the Social Security Regulations (the "Regulations"). *Id.* The ALJ also noted that Plaintiff alleged disability due to headaches. *Id.* At the third step of the analysis, the ALJ determined that Plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. T. 53-61. Since Plaintiff did not have an impairment or combination of impairments that met, medically equaled any listing or functionally equaled the Listings, the ALJ concluded that she was not disabled prior to attaining age eighteen. T. 61.

The ALJ next considered whether Plaintiff was disabled after attaining age eighteen. As to step one, the ALJ had found that Plaintiff had not engaged in substantial gainful activity. At step two, the ALJ determined that Plaintiff continued to have the same severe impairments she had prior to attaining age eighteen, and that she had not developed any new impairments since attaining age eighteen. *Id.* At the third step of the analysis, the ALJ determined that since attaining age eighteen, Plaintiff's impairments did not meet or equal a listed impairment. T. 62. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "light work" as defined in the Regulations "except work is limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; involving only simple work related decisions with few, if any, workplace changes." T. 62. At step four, the ALJ concluded that Plaintiff had no past relevant work. T. 63. At step five, relying on testimony from a vocational expert and the medical-vocational guidelines set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. T. 63. Therefore, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act. T. 64.

**C.     Analysis**

In seeking federal judicial review of the Commissioner's decision, Plaintiff argues that the ALJ erred by: (1) failing to expressly state the weight given to the opinion of Plaintiff's teacher; (2) failing to apply the appropriate legal standards when assessing Plaintiff's credibility; (3) making an RFC finding that is not supported by substantial evidence; and (4) adopting an improper hypothetical posed to the vocational expert.

    **1.     Weighing Opinion Evidence Given by "Other Sources"**

Plaintiff's English as a Second Language ("ESL") teacher, Alfredo Gomez, completed two Teacher Questionnaires as part of the Commissioner's review of Plaintiff's application for SSI. T. 196-208, 235-242. ALJ Peffley considered and discussed Mr. Gomez's opinions in the context of the functional equivalency analysis. *See* T. 56-60. Plaintiff contends that "[t]he ALJ's failure to state what weight, if any, was given to Mr. Gomez's opinion was erroneous." Dkt. No. 16 at 16-17. Defendant responds that the ALJ's failure to explicitly state the weight given to Mr. Gomez's opinion is not error, and directs the Court's attention to the ALJ's extensive discussion of Mr. Gomez's opinions. *See* Dkt. No. 17 at 18.

Teachers are not "acceptable medical sources" whose opinions may be entitled to controlling weight, but rather are considered "other sources" whose opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06–03p, Policy Interpretation Ruling Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *2-3 (Soc. Sec. Admin. Aug. 9, 2006); *see* 20 C.F.R. §§ 404.1513(a), (d)(3), 416.913(a), (d)(3); *see also Reid v. Astrue*, No. 07-CV-577, 2010 WL 2594611, *5 n.4 (N.D.N.Y. June 23, 2010) ("While the opinions of educators and other non-medical sources are not entitled to controlling weight under the regulations, they are, nevertheless deemed valuable sources of evidence in assessing impairment severity and functioning and should be considered by the ALJ."). "Opinions offered by teachers 'should be evaluated by using the 20 C.F.R. § 416.927 factors,' although 'not ever factor will apply in every case.'" *Crouch v. Astrue*, No. 5:11-820, 2012 WL 6948676, *3 (N.D.N.Y. Dec. 31, 2012) (citing SSR 06-03p, 2006 WL

7

2329939, at *5), *report and recommendation adopted by* 2012 WL 316547 (N.D.N.Y. Jan. 28, 2012). Such factors include:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and
- Any other factors that tend to support or refute the opinion

With regard to the ALJ's duty to explain his evaluation of the opinion provided by the "other source," the Regulations provide as follows:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," *or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning*, when such opinions may have an effect on the outcome of the case.

SSR 06–03p, 2006 WL 2329939, at *6 (emphasis added).

Plaintiff is correct that it is preferable for an ALJ to explain the weight assigned to opinions from "other sources," including teachers such as Mr. Gomez. However, the Regulations provide that so long as the ALJ "otherwise ensure[s] that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning," there is no error. *Id.* Here, the ALJ clearly considered the Mr. Gomez's opinions, although it may not be as clear what weight he assigned them. *See* T. 56-60. Nevertheless, the ALJ's functional equivalency analysis is replete with references to the opinions. For example, the ALJ noted Plaintiff's teacher's opinions with respect to her ability to function in the domains of Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, and Caring for Yourself, but concluded that the evidence of record demonstrated less

8

than marked limitations in each of those domains. *See id.* "Courts conducting judicial review in social security cases do not require perfect opinions or rigid, mechanical, formulaic applications of governing legal principles." *Anderson v. Colvin*, No. 5:12-cv-1008, 2013 WL 5939665, *7 (N.D.N.Y. Nov. 5, 2013) (citing, *inter alia*, SSR 06-03p, 2006 WL 2329939, at *6). "Plaintiff essentially invites the Court to re-weigh the evidence . . . , [but] it is an [ALJ's] exclusive prerogative to sort through and resolve conflicts in the evidence." *Crouch*, 2012 WL 6948676, at *8. Accordingly, despite the lack of specific weight assigned to the opinions, the Court is able to discern with ease the ALJ's reasoning, and his treatment of the evidence will not be disturbed. *See Curtis ex rel. B.C. v. Colvin*, No. 5:11–cv–1001, 2013 WL 3327957, *5 (N.D.N.Y. July 2, 2013).

## 2. Plaintiff's Credibility

In his functional equivalency analysis, ALJ Peffley found that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." T. 54-55. Citing several cases which criticize the language used by the ALJ, Plaintiff argues that it was erroneous for the ALJ to find Plaintiff's statements not fully credible on the basis that her statements were inconsistent with the ALJ's own RFC finding. *See* Dkt. No. 16 at 21.[1] Defendant responds that the mere

---

[1] The Court notes that Plaintiff makes two additional arguments with respect to the ALJ's credibility determination, which do not appear to be based upon a failure to apply the appropriate legal standards. *See* Dkt. No. 16 at 20-21. To the extent these arguments are to be construed as a contention that the ALJ's credibility determination was not supported by substantial evidence, the Court finds that this determination was supported by substantial evidence. As discussed below, it is within the ALJ's discretion to assess credibility and arrive at an independent judgment. Since the ALJ's credibility assessment is supported by the evidence of record, the Court will not disturb

appearance of this boilerplate sentence in the ALJ's decision does not render the credibility finding invalid, and highlights the ALJ's detailed discussion of Plaintiff's credibility. *See* Dkt. No. 17 at 22-23.

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§

---

the ALJ's judgment.

416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. Jul. 2, 1006). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891,*10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility,

11

>supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

In this case, the ALJ discussed Plaintiff's hearing testimony and determined:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, *the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below*.
>
> Specifically, the undersigned notes there are multiple inconsistencies in the record which undermine the claimant's credibility. Despite the claimant and her father's testimonies regarding her significant functional limitations, the claimant's physical examination results consistently revealed essentially normal physical functions. The claimant's consultative examiner showed that she had normal range of motion in both upper and lower extremities. (Exh. 1F, p. 3). She had no muscle atrophy. Her gait was normal; she had no trouble getting on and off the exam table. The claimant's fine motor functioning and strength of her hands were age appropriate. Similarly, the claimant underwent a physical therapy examination on October 19, 2010. (Exh. 5F, pp. 1-4). The physical therapist noted the claimant's seated and standing postures were within normal limits. (Id. at 2). Again, the claimant's muscle strength was reported as 5/5 in all extremities. The claimant's balance was good. Mobility was normal. She was independent with all transfers. Based on the claimant's exam results, the physical therapist determined the claimant had "no need for intervention" and discontinued services. (Id. at 3). The record contains no mention of the severe arm swelling the claimant testified to at the hearing. Of note, the claimant stated she cannot use her fingers, but she also revealed that she plays piano at school. Furthermore, and importantly, the claimant is not on any medication or treatment for these alleged disabling limitations.

T. 54-55 (emphasis added).

Several courts in the Second Circuit have criticized the boilerplate language used by ALJ Peffley on the basis that it essentially reverses the standard. *See e.g.*, *Cruz v. Colvin*, No. 12 Civ. 7346, 2013 WL 3333040, \*16 (S.D.N.Y. July 2, 2013) (Peck, M.J.); *Kunkel v. Comm'r of Soc. Sec.*, No. 12-CV-6478, 2013 WL 4495008, \*20 (W.D.N.Y. Aug. 20, 2013) ("it is not sufficient for an ALJ to merely state that he finds the claimant incredible to the extent that her complaints are inconsistent with is RFC determination"). As one court has noted, "[n]either the Social Security regulations nor this Circuit's caselaw support the idea that an ALJ may discredit a claimaint's subjective complaints on the basis of the ALJ's own finding of the claimaint's RFC." *Cruz*, 2013 WL 3333040, at \*16 (citations omitted). The Seventh Circuit has consistently derided such language as "meaningless boilerplate." *Pierce v. Colvin*, --- F.3d ----, 2014 WL 104158, \*3 (7th Cir. Jan. 13, 2014); *see also Lott v. Colvin*, --- Fed.Appx. ----, 2013 WL 5630633, \*4 (7th Cir. Oct. 16, 2013) ("We have repeatedly criticized this exact boilerplate (because it asks ALJs to determine a claimant's symptoms before addressing credibility, instead of the other way around)"). "[T]his boilerplate statement 'gets things backwards' because 'the passage implies that ability to work is determined first and is then used to determine the claimant's credibility.'" *Torres v. Commissioner of Social Sec.*, No. 13-CV-330, 2014 WL 69869, \*14 (E.D.N.Y. Jan. 09, 2014) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). "'The requirements of 20 C.F.R. § 404.1529(c)(4) provide that the ALJ must make a credibility assessment before making a residual functional capacity assessment, because the credibility assessment is used to determine Plaintiff's limitations and residual functional capacity.'" *Id.* (quoting *Faherty v. Astrue*, No. 11-CV-2476, 2013 WL 1290953,\*16 (E.D.N.Y. Mar. 28, 2013)). However this erroneous boilerplate language does not merit remand "if the ALJ offers specific reasons to disbelieve the claimaint's testimony." *Lott*, 2013 WL 5630633, at \*4 (citations omitted); *see also Pierce*, 2014 WL 104158,

13

at *3 ("In this case, though, the ALJ followed the boilerplate conclusion with a detailed explanation of the evidence and his reasoning about credibility, so the boilerplate phrases are not the problem."). Courts in the Second Circuit have adopted the Seventh Circuit's reasoning on this issue. *Garcia v. Colvin*, No. 12-CV-2140, 2014 WL 119433, *10 (E.D.N.Y. Jan. 10, 2014) (collecting cases).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ's use of the contested boilerplate does not warrant remand here. This Court agrees that the use of such boilerplate is conclusory and unhelpful. "On the other hand, reviewing courts do not demand perfect decisions, and 'while this sort of boilerplate is inadequate, by itself, to support a credibility finding, its use, does not make a credibility determination invalid.'" *Crofoot v. Commissioner of Social Sec.*, No. 1:12-cv-521, 2013 WL 5493550, *11 (N.D.N.Y. Sept. 30, 2013) (quoting *Adams v. Astrue*, No. 10C7849, 2012 WL 3065299, *9 (N.D. Ill. July 20, 2012)).

ALJ Peffley's decision demonstrates that he considered the objective factors identified in the Regulations, engaged in the two-step process, and articulated specific reasons for finding Plaintiff's subjective complaints not fully credible, all as required by circuit law. Thus, there is no obvious structural legal error in ALJ Peffley's approach to assessing credibility of Plaintiff's subjective testimony regarding persistence, intensity, and limiting effects of her symptoms. This point of error thus collapses into a disagreement with the evidentiary bases for ALJ Peffley's finding that Plaintiff's subjective testimony was not credible. *Crofoot*, 2013 WL 5493550, at *11.

Here, the ALJ noted "multiple inconsistencies in the record which undermine[d] the claimant's credibility." T. 55. ALJ Peffley explained that despite Plaintiff's testimony regarding her functional limitations, her "physical examination results consistently revealed essentially

14

normal physical functions." *Id.* He further observed that "[t]he record contain[ed] no mention of the severe arm swelling that claimant testified to at the hearing." *Id.* Importantly, "the claimant stated she cannot use her fingers, but she also revealed that she plays piano at school." *Id.* Finally, the ALJ found that Plaintiff was not on any medication or receiving any treatment for her alleged disabling limitations. *See id.*

Taken as a whole, the record supports the ALJ's determination that Plaintiff was not entirely credible. The Court finds that the ALJ employed the proper legal standards in assessing the credibility of Plaintiff's complaints and adequately specified the reasons for discrediting Plaintiff's statements. *Torres*, 2014 WL 69869, \*14 ("In the instant case, the ALJ offered reasons for discrediting plaintiff's testimony that were grounded in objective medical evidence. Accordingly, the Court does not discern reversible error in the legal standard by which the ALJ assessed plaintiff's credibility."). Accordingly, the Court finds no basis to reverse the Commissioner's decision because of an error in assessing Plaintiff's credibility.

### 3. Residual Functional Capacity

Residual functional capacity is:

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, \*2 (Soc. Sec. Admin. July 2, 1996)). In making an RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations

which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a)**.**

Plaintiff argues that the ALJ "erred in failing to properly evaluate the opinion of consultative examiner, Dr. Shapiro." Dkt. No. 16 at 22.[2] Plaintiff contends that "[b]ecause Dr. Sharpiro is a psychologist, and an expert in evaluating medical disability claims, and her opinions were consistent with her own findings, as well as the opinions of Plaintiff's teacher, her opinion should have been afforded significant weight. As such, it was erroneous for the ALJ to afford her opinion regarding Plaintiff's difficulties with social functioning only 'little weight.'" *Id.* at 24. In response, Defendant argues that the ALJ's decision should be upheld as it is supported by substantial evidence. *See* Dkt. No. 17 at 24.

> Unless the ALJ gives a treating physician's opinion controlling weight, the ALJ must consider the following factors in deciding what weight to accord to any medical opinion: (1) the existence of an examining relationship; (2) the existence of the treatment relationship, namely the length of the treatment relationship and the frequency of examination; (3) supportability, namely, more weight is given the more relevant the evidence and the better the explanation presented are in supporting an opinion; (4) consistency of the opinion with the record; (5) specialization; and (6) other relevant factors.

*Brown v. Colvin*, No. 12 Civ. 7092, 2014 WL 104068, *9 (S.D.N.Y. Jan. 10, 2014) (citing 20 C.F.R. § 404.1527(d)) (Fox, M.J.). In this regard, "[a]ny conflicts in the medical evidence are left to the finder of fact to resolve and the courts may not substitute their judgments so long as the decision of the ALJ, and ultimately that of the Commissioner, 'rests on adequate findings supported by evidence having rational probative force.'" *Serrano v. Colvin*, No. 12 Civ. 7485,

---

[2] In her brief, Plaintiff refers to certain requirements under the Regulations that apply to "treating sources." Since Dr. Shapiro is a consulting examiner, as Plaintiff concedes, the treating physician rule does not apply. *See Shatraw v. Astrue*, No. 7:04-CV-0510, 2008 WL 4517811, *11 (N.D.N.Y. Sept. 30, 2008).

2014 WL 197677, *10 (S.D.N.Y. Jan. 17, 2014) (quoting *Galiotto v. Astrue*, 266 Fed. Appx. 66, 67 (2d Cir. 2008)) (Cott, M.J.).

Here, the ALJ explained the weight afforded to different aspects of Dr. Shapiro's opinions:

> Consultative examiner, Jeanne Shapiro, Ph.D., opined the claimant appeared capable of daily functioning, appeared capable of age appropriate tasks, and seemed to have some difficulty with social interactions. She attributes many of the claimant's difficulties to the language barrier. The claimant's limited ability to communicate in English is supported by the record, therefore, osme [sic] weight is attributed to this portion of Dr. Shapiro's opinion. Dr. Shapiro's opinion regarding the claimant's difficulty interacting with peers and adults is given little weight. Records from the claimant's teacher suggest that she has no problems playing cooperatively with her peers, making and keeping friends, and seeking attention properly. (Exh. 16E, p. 7).

Based upon a review of the evidence of record, the Court finds that the ALJ's analysis of Dr. Shapiro's opinions was not erroneous and was supported by substantial evidence. As noted by the ALJ, Plaintiff's teacher Mr. Gomez reported that Plaintiff had no problems playing cooperatively with other children, making and keeping friends, seeking attention appropriately, taking turns in a conversation, and interpreting meaning of facial expressions, body language, hints, and sarcasm. T. 202. It is within the discretion of the ALJ to resolve any conflict between Mr. Gomez's opinion and Dr. Shapiro's. Since Mr. Gomez had the opportunity to observe Plaintiff's social interactions first-hand, unlike Dr. Shapiro, and Dr. Shapiro's opinions were based on the Plaintiff's and her father's subjective complaints, the ALJ's was entitled to give Dr. Shapiro's opinion little weight.

Plaintiff directs the Court's attention to instances in which Dr. Shapiro's opinions were consistent with those of her teacher, Mr. Gomez. Such consistency, Plaintiff argues, dictates that Dr. Shapiro's opinion should have been afforded significant weight. However, since the Court has concluded that the ALJ's findings were supported by substantial evidence, those findings will

not be disturbed, even where substantial evidence may conceivably support the plaintiff's position. Accordingly, the Court finds that there was no error with respect to the ALJ's RFC determination warranting remand.

### 4. Vocational Expert Testimony

Plaintiff argues that the ALJ erred because his hypothetical questions to the vocational expert did not reflect the full extent of her limitations. *See* Dkt. No. 16 at 24. The ALJ is required to "use the same residual functional capacity assessment used to determine if a claimant can perform past relevant work when assessing a claimant's ability to perform other work." *Ball v. Astrue*, 755 F. Supp. 2d 452, 466 (W.D.N.Y. 2010) (citing 20 C.F.R. § 404.1550(c)(2)). Additionally, the hypothetical questions posed by the hearing officer to a vocational expert must "set out all of the claimant's impairments." *Id.* (citing *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001)).

If hypothetical questions do not include all of a claimant's impairments, limitations and restrictions, or are otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion that the claimant is not disabled. *Melligan v. Chater*, No. 94-CV-944S, 1996 WL 1015417, *8 (W.D.N.Y. Nov. 14, 1996); *Gladle v. Astrue*, No. 7:12-CV-284, 2013 WL 4543147, *5 (N.D.N.Y. Aug. 27, 2013). Plaintiff's hypothetical questions to the vocational expert closely tracked his RFC determination, which this Court has already concluded is supported by substantial evidence. *See Salmini v. Comm'r of Soc. Sec.*, 371 Fed. Appx. 109, 114 (2d Cir. 2010) ("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment."); *Sizer v. Colvin*, No. 12-CV-6667T, 2013 WL 6241004, *11 (W.D.N.Y. Dec. 03, 2013) ("Because there is substantial evidence in the record to

18

support the RFC assessment of the ALJ, the ALJ is entitled to rely on the vocational expert's testimony that Plaintiff could perform other jobs that exist in significant numbers in the national economy.").

Plaintiff's counsel argues that the ALJ should have credited additional hypothetical questions to the vocational expert that Plaintiff was limited to occasional use of the upper right extremity for handling, reaching, and fingering, or that she would need to would need to shift positions at will from sitting, standing, or walking due to the inability to stand for long periods of time. *See* Dkt. No. 16 at 25; T. 38-40. However, the ALJ did not incorporate these limitations into his RFC determination and, as discussed above, the Court has found that there is substantial evidence supporting that determination. *See McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, *21 (N.D.N.Y. Mar. 27, 2008) (to the extent the ALJ found that plaintiff's claims of non-exertional limitations were not credible, they were "properly disregarded" at step five). Hence, the ALJ did not err when he decided not to adopt the additional limitations suggested by the hypothetical questions posed by Plaintiff's counsel. *Polynice v. Colvin*, No. 8:12-CV-1381, 2013 WL 6086650, *16 (N.D.N.Y. Nov. 19, 2013); *see also Edwards v. Astrue*, 5:07-CV-898, 2010 WL 3701776, *14 (N.D.N.Y. Sept. 16, 2010) (the record did not support the plaintiff's claim that he suffered from "severe mental impairments"; thus, the ALJ properly rejected the expert's response to the hypothetical assuming such impairments). Accordingly, the Commissioner committed no error at step five, and in finding that Plaintiff was not disabled.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 4, 2014
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge